Lisa A. Ferrari (LF8081)
Edward M. Weisz (EW4461)
COZEN O'CONNOR
3 World Trade Center
175 Greenwich Street, 55th Floor
New York, NY 10007
Tel. (212) 509-9400
Fax: (212) 509-9492
Email: lferrari@cozen.com
       eweisz@cozen.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

McKEON ROLLING STEEL DOOR CO., INC.,

                              Plaintiff,

                    -v-

U.S. SMOKE & FIRE CORP.; ASA, GP, a General
Partnership; STEVEN SADEGHIAN, its General
Partner; and GUARDIAN FIRE TESTING
LABORATORIES, INC.,

                             Defendants.

-------------------------------------------------------------X

Case No: 1:23-CV-08720-ALC-RFT

**FIRST AMENDED COMPLAINT
FOR FEDERAL FALSE
ADVERTISING AND UNFAIR
COMPETITION; N.Y. STATE
DECEPTIVE TRADE
PRACTICES; N.Y. STATE FALSE
ADVERTISING; FEDERAL
CONTRIBUTORY FALSE
ADVERTISING**

**DEMAND FOR JURY TRIAL**

      Plaintiff McKeon Rolling Steel Door Co., Inc., by its attorneys, Cozen O'Connor, P.C., as

and for its First Amended Complaint, alleges:

<u>**NATURE AND BASIS OF ACTION**</u>

      1.     This action arises out of the false and misleading advertising and promotion of fire

shutter, curtain and door products by Defendants U.S. Smoke & Fire Corp. ("USS&F") and

Guardian Fire Testing Laboratories, Inc. ("Guardian"), and contributory false advertising by Defendants ASA, GP; ASA, GP's General Partner, Steven Sadeghian, and Guardian.

2.      The actions of Defendant USS&F constitute false advertising and unfair competition in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349(a), (h); and false advertising in violation of N.Y. Gen. Bus. Law § 350.

3.      The actions of Defendant Guardian as set forth herein constitute false advertising and unfair competition in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and contributory false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

4.      The actions of Defendant ASA, GP as set forth herein constitute contributory false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

5.      Plaintiff seeks temporary, preliminary, and permanent injunctive relief, actual damages, punitive damages, and recovery of its attorney fees and costs incurred in connection with this action.

## THE PARTIES

6.      Plaintiff McKeon Rolling Steel Door Co., Inc. ("MRSD" or "Plaintiff") is now, and at all relevant times was, a corporation organized and existing under the laws of the State of New York, and has its principal place of business at 44 Sawgrass Drive, Bellport, New York 11713.

7.      Upon information and belief, Defendant USS&F is now, and at all relevant times was, a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located at 12310 Pinecrest Road, Suite 300, Reston, Virginia 20191.

8.      Upon information and belief, Defendant ASA, GP is now, and at all relevant times was, a General Partnership having an address of 4764 Hollins Ferry Road, Halethorpe, Maryland 21227.

9.      Upon information and belief, defendant Steven Sadeghian is an adult resident and citizen of Virginia having a business address of 12310 Pinecrest Road, Suite 300, Reston, Virginia 20191, and is one of the General Partners of ASA, GP, and the President and Chief Executive Officer of Defendant USS&F.

10.     Upon information and belief, Defendant Guardian is now, and at all relevant times was, a corporation organized and existing under the laws of the State of Nevada, and registered as a Foreign Business Corporation with the State of New York, having a principal executive office address of 114 Lincoln Avenue, Cobleskill, New York 12043.

## JURISDICTION AND VENUE

11.     This is an action for federal false advertising and unfair competition, both direct and contributory, under 15 U.S.C. § 1125(a) and violation of New York's General Business Law §§ 349 and 350.

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a) and (b), 15 U.S.C. § 1121(a), and supplemental jurisdiction under 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over Defendant USS&F because USS&F transacts business within the State of New York, contracts to supply goods or services in the State of New York, has engaged in tortious acts within the State of New York, and has engaged in tortious acts outside the State of New York causing injury within the State. More specifically, Defendant USS&F markets, promotes, advertises, offers for sale, engages in projects, and distributes its products throughout the United States, including in the Southern District of New York. Defendant USS&F has voluntarily placed its products into the stream of commerce with the

expectation that the products will be purchased by consumers in the Southern District of New York. As such, Defendant USS&F has established minimum contacts with the forum such that the exercise of jurisdiction over USS&F would not offend traditional notions of fair play and substantial justice.

14.    This Court has personal jurisdiction over Defendant ASA, GP because ASA, GP transacts business within the State of New York, has engaged in tortious acts within the State of New York, and has engaged in tortious acts outside the State of New York causing injury within the State.  More specifically, Defendant ASA, GP arranged for the testing of its products with a New York-based testing service; maintains accreditation files of such testing at said New York-based testing service; manufactures the subject products for eventual sale in New York and elsewhere, and facilitates Defendant USS&F in promoting and advertising the products in New York State.  As such, Defendant ASA, GP has established minimum contacts with the forum such that the exercise of jurisdiction over ASA, GP would not offend traditional notions of fair play and substantial justice.

15.    This Court has personal jurisdiction over Defendant Stephen Sadeghian based upon the Court's personal jurisdiction over ASA, GP, of which Defendant Sadeghian is a general partner.

16.    This Court has personal jurisdiction over Defendant Guardian because Guardian resides in the State of New York, is registered to do business in New York, namely, the conducting of product testing services, including testing products of one or more of the defendants herein, and transacts business within the State of New York.  Upon information and belief, Guardian markets, promotes, advertises and/or performs its services within the State of New York, including in the Southern District of New York.

17.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because the claims arose within this district and a substantial part of the events and injury giving rise to Plaintiff's claims have occurred and continue to occur in this district.

## GENERAL ALLEGATIONS

18.    Plaintiff  MRSD is engaged in the creation, manufacture and sale of commercial and special purpose safety assemblies, including fire and security door, shutter, and curtain assembly systems.

19.    Upon information and belief, Defendant USS&F is engaged in the manufacture and sale of commercial and special purpose fire safety assemblies, including shutters, curtains, and door systems which are directly competitive with MRSD's products.

20.    Upon information and belief, Defendant Steven Sadeghian is the President and CEO of Defendant USS&F and a General Partner of Defendant ASA, GP. Upon information and belief, Defendants USS&F and ASA, GP are related entities.

21.    The products offered for sale by Plaintiff MRSD and Defendant USS&F are critical to public health and safety because they are housed in hospitals, universities, airports, malls, and other facilities widely accessed by the general public, and their primary purpose is to protect the public from life-threatening fire and smoke conditions at such facilities.

22.    Plaintiff MRSD and Defendant USS&F manufacture and sell fire door, curtain and/or shutter system assemblies (generally referred to herein as "Fire Safety Assemblies"), which are evaluated under safety testing requirements adopted and implemented by the American National Standards Institute ("ANSI") and Underwriters Laboratories ("UL").

23.    Specifically, certain Fire Safety Assemblies are often required to meet the UL 10B *Standard for Safety for Fire Tests of Door Assemblies,* Tenth edition, Dated May 4, 2020 (the "UL

10B Standard for Safety"). To receive a UL 10B certification and advertise a Fire Safety Assembly as UL 10B-certified, the product must pass specific testing requirements. These tests are conducted by authorized third-party ANSI-accredited testing facilities. The UL 10B Standard for Safety states that test reports "shall show the performance under the specified exposure period chosen from the following: 20-minute, 30-minute, 3/4-hour, 1-hour, 1-1/2-hour, 3-hour, or 4-hour."

24.    Plaintiff MRSD has invested significant time and resources in ensuring that its products are tested by reputable ANSI-accredited testing facilities and that its products meet the rigorous standards to be UL-certified for the applicable certification, such as UL 10B.

25.    Upon information and belief, Defendant Guardian is an ANSI-accredited "Product Certification Body" and "Third Party Inspection Agency." As such, Guardian has ANSI's authorization to publicly list Guardian-tested and approved Fire Safety Assemblies as being in compliance with ANSI and UL standards.

26.    Upon information and belief, Guardian commissions third-party testing agencies to facilitate and administer certain UL 10B tests, which Guardian "witnesses."

27.    A certification of a Fire Safety Assembly as UL 10B-certified is significant to companies in the industry because members of the public, including architects, building code officials, contractors and others, rely upon such information and expertise to select Fire Safety Assemblies over vendors and products which do not have such certifications.  Such certifications indicate to the public that the particular Fire Safety Assembly is able to withstand fire conditions at various levels, which is often necessary for building projects to comply with State and local fire and building codes and other regulations.

28.    USS&F maintains a website at www.ussmokeandfirecurtain.com, on which it prominently advertises that its Fire Safety Assemblies are "UL Listed, UL Labeled, UL Certified, [and] UL Recognized."

29.    Guardian maintains a website at www.firetesting.com (the "Guardian Website"), at which members of the public can search for and determine whether a company's products are UL 10B-certified when deciding which Fire Safety Assemblies to purchase.

30.    In addition to testing products and preparing written test reports, Guardian performs periodic follow-up inspections for the products it previously tested and approved for UL 10B certification and other standards.

31.    Upon information and belief, customers pay Guardian to test their products and prepare testing reports, and also pay Guardian to maintain their product listings and certifications on the Guardian Website.

32.    A listing and certification of a customer's product on the Guardian Website allows a customer to label its product as UL 10B certified.

33.    The listing and certification of a product on the Guardian Website, and/or the labeling of such product as UL 10B certified, constitute(s) advertisements or promotions by Guardian of its product testing, test report preparation, follow-up inspection, and website listing services.

34.    This case concerns improper certification, by Guardian, of certain ASA, GP and USS&F Fire Safety Assemblies, namely, the [i] Hose Stream 180 First Responder (Defendants also refer to this product as "Hose Stream 180 First Responder Fire Shutter", "Hose Stream 180 Steel-tex Fire Shutter", and "Hose Stream 180 Shutter"; it is referred to herein as the "180 Shutter"); [ii] the Hose Stream 120 Fire Shutter System (Defendants also refer to this product as

"Hose Stream 120", "Hose Stream 120 Fire Curtain System", "Hose Stream 120 Fire Curtain and Frame System", and "Hose Stream 120 Fire Curtain"; it is referred to herein as the "120 Shutter"); and [iii] the Hose Stream 120 Horizontal Fire Shutter (referred to herein as the "120 Horizontal Shutter"). Guardian displayed, and as of this filing continues to display, the listings and certifications for these products on the Guardian Website and continues to allow ASA, GP to label their products and USS&F to promote, market and sell these products as UL 10B certified. ASA, GP, through its principal, Steven Sadeghian, manufactures the three aforementioned Fire Safety Assemblies, and is the owner and holder of the certification file for the subject Fire Safety Assemblies, and USS&F advertises and distributes said Fire Safety Assemblies to customers.

35.     Even after being notified that the tests conducted for the 180 Shutter and the 120 Shutter were inadequate, and that the certifications of other ASA, GP products were also likely improper, Guardian continues to maintain the listings on the Guardian Website; which allows ASA, GP to label their products and USS&F to promote, market and sell these products as UL 10B certified; and, upon information and belief, continues to accept payment from USS&F and/or ASA, GP for the maintenance of the listings and certifications on the Guardian Website. Even after being notified that the tests of these Fire Safety Assemblies for UL 10B certification were inadequate, ASA, GP, through its General Partner, Steven Sadeghian, continues to [i] hold itself out as the owner of the certification file for these Fire Safety Assemblies, [ii] maintain the listing of the products with Guardian, and [iii] manufacture the products for sale by USS&F.  Even after being notified that the tests of these Fire Safety Assemblies for UL 10B certification were inadequate, USS&F continues to advertise, sell and distribute the subject fire shutter system assemblies to customers as UL 10B-certified.

**The Hose Stream 180 First Responder ("180 Shutter")**

36.    Upon information and belief, Defendant ASA, GP commissioned Guardian to administer a 180-minute UL 10B standard test to certify USS&F's 180 Shutter.  The purpose of the test is to determine if a fire safety assembly qualifies for a 180-minute fire protection rating when tested in accordance with UL 10B.

37.    Upon information and belief, Guardian commissioned NGC Testing Services "NGC" to conduct the UL 10B test on behalf of Guardian for ASA, GP on the 180 Shutter at NGC's facility. The respective test on the 180 Shutter was conducted in or about December, 2021 (the "December 2021 Test").

38.    Guardian subsequently issued a test report on or about January 19, 2022 (the "January 2022 Report") detailing the results of the December 2021 Test. See Exhibit A. The January 2022 Report shows that "Guardian…witnessed [the December 2021 Test] for ASA GP at NGC Testing Services," and that the 180 Shutter testing specimen "was installed by employees of ASA, GP at NGC testing services." *Id*. at page 3.

39.    Guardian's January 2022 Report provides that "ASA, GP's [180 Shutter] met all criteria for a 180 minute UL 10B fire endurance test. Therefore, the [180 Shutter is] eligible for Guardian's listing and labeling program." *Id*. at page 6.

40.    Guardian then certified and subsequently listed the 180 Shutter on the Guardian Website as "180 minute UL 10B-certified." See Exhibit B inclusive of a screen shot of the Guardian Website showing ASA, GP's 180 Shutter listed under Certified Products, and Guardian's corresponding Product Listing for the 180 Shutter.

41.    Upon information and belief, the December 2021 Test for the 180 Shutter "witnessed" by Guardian, including ASA, GP's installation thereof, did not adhere to the 180-

minute UL 10B Standard For Safety as required to certify a product as 180-minute UL 10B-certified.

42.    To receive a 180-minute UL 10B certification, the tested specimen must be subjected to and pass the 180-minute UL 10B testing standards and requirements. The testing standard for a 180-minute UL 10B certification requires in Table 10.1 (titled "Water pressure at base of nozzle and duration of application") that a hose stream be administered to the specimen at 45 PSI at 3 seconds per square foot.  The January 2022 Report for the 180 Shutter shows that the hose stream test was misapplied, as the hose stream was operated  at 30 PSI for 1.5 seconds per square foot. See Exhibit A at page 6. This inaccurate procedure was "witnessed" and reported by Guardian.

43.     The 180-minute UL 10B Standard For Safety further requires that the testing specimen be "mounted on the exposed side of the opening in the wall closing the furnace chamber" (UL 10B Section 7.2) during the fire endurance and hose stream tests. The January 2022 Report shows, however, that ASA, GP mounted the 180 Shutter incorrectly, with the 180 Shutter mounted on the unexposed side of the opening in the wall closing the furnace chamber, so that the head box and other vulnerable components of the 180 Shutter were protected from direct exposure to the fire endurance and hose stream tests. See Exhibit A at page 4. This inaccurate procedure was "witnessed" and reported by Guardian.

44.    The aforementioned discrepancies in the December 2021 Test effectively disqualify the 180 Shutter from obtaining a 180-minute UL 10B certification.

45.    Despite the failure to properly administer the 180-minute UL 10B testing standards and requirements to the 180 Shutter during the December 2021 Test, as witnessed and reported by

Guardian, Guardian certifies and lists the 180 Shutter on the Guardian Website as 180-minute UL 10B-certified. See Exhibit B.

46.    Despite the flawed December 2021 Test and January 2022 Report, USS&F advertises the 180 Shutter as 180-minute UL 10B-certified. See Exhibit C inclusive of a screen shot of USS&F's website and a marketing brochure advertising the 180 Shutter as 180-minute UL 10B-certified. USS&F is assisted, enabled, and encouraged by ASA, GP, which, upon information and belief, manufactures the 180 Shutter and holds the accreditation for the 180 Shutter.

**The Hose Stream 120 Fire Shutter System ("120 Shutter")**

47.    Upon information and belief, USS&F commissioned Guardian to administer a 90-minute UL 10B fire endurance test in order to certify USS&F's 120 Shutter as 90-minute UL 10B certified. The purpose of the test is to determine if a product qualifies for a 90-minute rated label and certification when tested in accordance with the UL 10B Standard For Safety.

48.    Upon information and belief, Guardian commissioned NGC to administer the test on behalf of Guardian for USS&F on the 120 Shutter at NGC's facility. NGC conducted the test on the 120 Shutter on or about March 29, 2017 (the "March 2017 Test").

49.    Guardian subsequently issued a test report for the 120 Shutter on or about April 18, 2017 (the "April 2017 Report") detailing the results of the March 2017 Test. See Exhibit D. The April 2017 Report shows that USS&F employees installed the 120 Shutter test specimen at NGC's facility and that Guardian's engineers and technicians witnessed the installation and testing. Guardian's April 2017 Report states that the 120 Shutter "test specimen met the criteria for a UL 10B 90 minute fire rating. . . ." *Id* at page 3.

50.    Guardian then certified and subsequently listed the 120 Shutter on the Guardian Website as "meet[ing] the minimum fire door and fire assembly rating (1-1/2 hours)." See Exhibit

E inclusive of a screen shot of the Guardian Website showing ASA, GP's 120 Shutter listed under Certified Products, and Guardian's corresponding Product Listing for the 120 Shutter.

51.    Upon information and belief, the March 2017 Test "witnessed" by Guardian on the 120 Shutter, including USS&F's installation thereof, failed to adhere to the UL 10B 90-minute fire endurance and hose stream test standards as required by the UL 10B Standard For Safety to certify a product with a 90-minute UL 10B rating.

52.    To receive a 90-minute UL 10B rating and certification, the tested specimen must be subjected to the 90-minute, or 1-1/2-hour UL 10B Standard For Safety testing requirements. For instance, the 90-minute UL 10B testing standards require that the specimen withstand the test "without developing openings anywhere throughout the assembly." Guardian's April 2017 Report claimed that the 120 Shutter did not develop openings anywhere and that there was "completely intact stainless steel mesh present."  Mesh, however, *is* an "opening," making clear that the 120 Shutter did not meet this testing requirement.

53.    The 90-minute UL 10B Standard For Safety further requires that the testing specimen be "mounted on the exposed side of the opening in the wall closing the furnace chamber" (UL 10B Section 7.2) during the fire endurance and hose stream tests. However, the April 2017 Report shows that USS&F incorrectly installed the 120 Shutter so that it was mounted on the unexposed side of the opening in the wall closing the furnace chamber, with the head box and other vulnerable components of the 120 Shutter protected from direct exposure to the fire endurance and hose stream tests, as witnessed and reported by Guardian.

54.    The aforementioned discrepancies in the March 2017 Test effectively disqualify the 120 Shutter from obtaining a 90-minute UL 10B certification and rating.

55.     Despite the failure to properly administer the 90-minute UL 10B test of the 120 Shutter during the March 2017 Test, and despite the 120 Shutter's actual failure of the test, Guardian certifies and lists the 120 Shutter as 90-minute UL 10B-certified on the Guardian Website. See Exhibit E.

56.     Despite the flawed March 2017 Test and April 2017 Report, USS&F falsely advertises the 120 Shutter as 90-minute UL 10B-certified. See Exhibit F inclusive of a screen shot of USS&F's website and a marketing brochure advertising the 120 Shutter as 90-minute UL 10B-certified. USS&F is assisted, enabled, and encouraged by ASA, GP, which, upon information and belief, manufactures the 120 Shutter and owns and holds the accreditation for the 120 Shutter.

**The Hose Stream 120 Horizontal Fire Shutter ("120 Horizontal Shutter")**

57.     Upon Information and belief, Defendant ASA, GP commissioned Guardian to conduct a 120-minute UL 10B fire endurance test in order to certify USS&F's Hose Stream 120 Horizontal Fire Shutter (the "120 Horizontal Shutter"). The purpose of the test is to determine if a fire safety assembly qualifies for a 120-minute fire protection rating when tested in accordance with UL 10B.

58.     Upon information and belief, Guardian commissioned NGC to conduct the UL 10B test on behalf of Guardian for ASA, GP on the 120 Horizontal Shutter at NGC's facility. The test was conducted on January 7, 2022 (the "January 2022 Test") with ASA, GP employees installing the system at NGC's facility and an engineer for Guardian witnessing the test. Guardian issued a test report for the 120 Horizontal Shutter on or about February 7, 2022 (the "February 2022 Report"). See Exhibit G showing the January 2022 Test details and February 2022 Report for the 120 Horizontal Shutter.

59.    Despite supposedly testing the 120 Horizontal Shutter in accordance with UL 10B 120-minute testing standards, the February 2022 Report states that the 120 Horizontal Shutter "met all criteria for a 180-minute UL 10B Fire endurance test. Therefore, the fire curtain and frame assembly are eligible for Guardian's listing and labeling program." See Exhibit G at page 6. The February 2022 Report also misidentifies the product being tested, calling it the "Hose Stream 180 First Responder", *see id*. at page 4, further calling into question the validity and accuracy of the February 2022 Report as a whole.

60.    Guardian then certified and subsequently listed the 120 Horizontal Shutter on the Guardian Website as having been tested in accordance with the UL 10B Standard For Safety and "attained a fire protective rating of 120 minutes with a hose stream"  in accordance with UL 10B. See Exhibit H inclusive of a screen shot of the Guardian Website showing ASA, GP's 120 Horizontal Shutter listed under Certified Products and Guardian's corresponding Product Listing for the 120 Horizontal Shutter.

61.    Upon information and belief, the January 2022 Test on the 120 Horizontal Shutter did not adhere to the UL 10B 120-minute fire endurance and hose stream test standards as required to certify a product with a 120-minute UL 10B rating, despite the February 2022 Report claiming that the 120 Horizontal Shutter qualified for a 180-minute rating, see Exhibit G, and despite Guardian listing the 120 Horizontal Shutter as 120-minute UL 10B certified, see Exhibit H.

62.    To receive a 120-minute UL 10B rating and certification, the tested specimen must be subjected to and pass the 120-minute UL 10B Standards For Safety testing standards and requirements. The testing standard for a 120-minute UL 10B certification requires in Section 10.1 that the hose stream test be administered to the specimen at 30 PSI for 1.5 seconds per square foot, to "all parts of the exposed surface."  Here, the 120 Horizontal Shutter testing specimen was 11

feet by 13.66 feet. Based on the size of the 120 Horizontal Shutter specimen tested during the January 2022 Test, the hose stream should have been applied to the 120 Horizontal Shutter for 225 seconds (11 x 13.66 x 1.5). *See* UL 10B Table 10.1.  However, the February 2022 Report shows that the host stream test was only applied to the 120 Horizontal Shutter for 150 seconds.

63.    The 120-minute test standard according to the UL 10B Standard For Safety further requires that the testing specimen be "mounted on the exposed side of the opening in the wall closing the furnace chamber" (UL 10B Section 7.2) during the fire endurance and hose stream tests. The February 2022 Report shows, however, that ASA, GP employees mounted the 120 Horizontal Shutter incorrectly, with the unexposed side of the opening in the wall closing the furnace chamber, so that the head box and other vulnerable components of the specimen were mounted on the unexposed side, thereby protecting them from direct exposure to the fire endurance and hose stream tests.

64.    The aforementioned discrepancies in the February 2022 Test effectively disqualify the 120 Horizontal Shutter from obtaining a 120-minute UL 10B certification.

65.    Although Guardian witnessed the improper January 2022 Test and drafted the February 2022 Report, Guardian certified and lists the 120 Horizontal Shutter as 120-minute UL 10B certified, despite the failure to even test the 120 Horizontal Shutter in accordance with the UL 10B Standard For Safety 120-minute testing standards. See Exhibit H showing a print out of the Guardian Website listing the 120 Horizontal Shutter and the 120 Horizontal Shutter Product Listing page.

66.    Despite the densely flawed January 2022 Test and February 2022 Report, USS&F advertises the 120 Horizontal Shutter as 120-minute UL 10B-certified. See Exhibit I inclusive of a screen shot of USS&F's website and a marketing brochure advertising the 120 Horizontal Shutter

as 120-minute UL 10B-certified. USS&F is assisted, enabled, and encouraged by ASA, GP, which, upon information and belief, manufactures the 120 Horizontal Shutter and owns and holds the accreditation for the 120 Horizontal Shutter.

**Summary of Defendants' Unlawful Conduct**

67.    Defendant USS&F advertises, represents, and describes its 180 Shutter, 120 Shutter, and 120 Horizontal Shutter (collectively referred to herein as the "Falsely Certified Products") as UL 10B-certified, although the tests witnessed, and reports issued, by Guardian based on the faulty tests show that the Falsely Certified Products do not meet the UL 10B testing and certification requirements.

68.    Defendant USS&F advertises, represents, and describes the Falsely Certified Products as safe for consumers in accordance with the UL 10B testing standards when in fact they are not, creating a critical public safety issue.

69.    Defendant Guardian represents and describes the Falsely Certified Products as having passed the respective UL 10B tests, when in fact they have not, and continues to allow ASA, GP to label their products and USS&F to promote, market and sell these products as UL 10B certified.

70.    Upon information and belief, Defendant Guardian continues to accept payment from USS&F and/or ASA, GP to maintain their listings and certifications for the Falsely Certified Products on the Guardian Website.

71.    Through Defendant Guardian's maintenance of the listings and certifications for the Falsely Certified Products on the Guardian Website, Guardian advertises and promotes its product testing and other aforementioned services to the public.

72.    Defendant ASA, GP manufactures the products and is the named owner of the accreditations on Guardian's website, and thereby enables USS&F to falsely advertise the Falsely Certified Products as being in compliance with applicable safety standards.

73.    Steven Sadeghian, as a principal of ASA, GP, is jointly and severally liable with ASA, GP for ASA, GP's wrongful acts.

74.    Plaintiff has lost business and customers due to Defendants' false advertising and misrepresentations regarding the Falsely Certified Products' UL 10B certifications.

75.    Upon learning of the faulty tests and flawed certifications concerning the 180 Shutter and the 120 Shutter, Plaintiff sent Defendant Guardian a letter on or about June 16, 2023, putting Guardian on notice of the issues with the respective tests and certifications for these two products, and demanding that Guardian remove the certification listings for these products from Guardian's website and review other certifications issued in connection with products of ASA, GP and USS&F. Plaintiff did not receive a response from Guardian, and Guardian did not remove the certification listings for the Falsely Certified Products from the Guardian website.  Upon information and belief, Guardian also did not re-test the products in response to Plaintiff's letter to determine if the products are in compliance and did not investigate other certified products of ASA, GP and USS&F to determine whether the products had been properly certified.

76.    Plaintiff sent Defendants USS&F, ASA, GP, and Steven Sadeghian a letter on or about June 16, 2023, putting USS&F, ASA, GP, and Steven Sadeghian on notice of the issues with the tests and false UL 10B certifications of the 180 Shutter and the 120 Shutter, and demanding that USS&F, ASA, GP, and Steven Sadeghian immediately cease mislabeling and marketing the Falsely Certified Products as UL 10B-certified and take action to determine whether any other of their other products had been improperly certified as compliant with UL standards. Plaintiff did

not receive a response from either USS&F, ASA, GP or Steven Sadeghian and these parties have continued to falsely advertise their products, and continued to assist in, and encourage, the false advertisement of these products as properly certified.

77.    Defendants USS&F, ASA, GP, its general partner Steven Sadeghian, and Guardian continue to falsely represent to the public that the Falsely Certified Products have passed the respective UL 10B tests and are properly UL 10B-certified.

78.    Defendant Guardian continues to receive payment from USS&F and/or ASA, GP to maintain the listings and certifications of the Falsely Certified Products, and Guardian promotes and advertises its product testing and other aforementioned services by maintaining the listings and certifications for the Falsely Certified Products, thus allowing ASA, GP to label their products and USS&F to promote, market and sell these products as UL 10B certified.

79.    Defendant USS&F unfairly competes with Plaintiff by falsely advertising its Falsely Certified Products as UL 10B-certified and as having properly passed the tests for such certifications. Defendant USS&F gains an unfair advantage over Plaintiff by manufacturing sub-par and inferior Fire Safety Assemblies and by falsely advertising the Falsely Certified Products as UL 10B-certified and as having complied with the requirements necessary for such certifications.

**COUNT I:**
**FEDERAL FALSE ADVERTISING**
**AND UNFAIR COMPETITION**
**AGAINST DEFENDANT USS&F**
**Lanham Act § 43(a), 15 U.S.C. § 1125(a)**

80.    Plaintiff hereby incorporates and restates the allegations set forth in paragraphs 1-79 as if fully set forth herein.

81.    Defendant USS&F's advertisements, website, and marketing materials, which state that the Falsely Certified Products are UL 10B-certified and have complied with the requirements necessary for such certifications, are material false or misleading statements that misrepresent the nature, characteristics, and qualities of these products. These statements are material misrepresentations upon which at least the public, marketplace, customers or potential customers have relied, and will continue to rely.

82.    Upon information and belief, Defendant USS&F, by virtue of its false or misleading statements that the Falsely Certified Products are properly UL 10B-certified when they are not, have also falsely or misleadingly represented that the Falsely Certified Products are therefore safe equivalents to Plaintiff's validly certified products, when they are not.

83.    Defendant USS&F's business practice of falsely or misleadingly advertising, labelling, and describing its products as UL 10B-certified, and as having complied with the requirements necessary for such certifications, in interstate commerce constitutes unfair competition and false advertising.

84.    Defendant USS&F knowingly distributes in this district, advertisements that contain false or misleading statements of fact regarding the UL 10B certifications and safety of the Falsely Certified Products.

85.    As a result of Defendant USS&F's false and misleading advertisements, descriptions, and representations, actual deception has occurred which tends to deceive a substantial portion of the intended consumers.

86.    Defendant USS&F's false and misleading advertisements, descriptions, and representations are material and are likely to influence consumer purchasing decisions.

87.     Consumers in the market for properly UL 10B-tested, rated, and certified Fire Safety Assemblies and systems that will withstand UL 10B 90-, 120-, or 180-minute testing standards would not choose the Falsely Certified Products if not for Defendant USS&F's false advertisements that the Falsely Certified Products are UL 10B-tested, rated, and certified.

88.     Defendant USS&F's false and misleading advertisements, descriptions, and representations injure both consumers and Plaintiff.

89.     Defendant USS&F's false and or misleading advertisements, descriptions and, representations mislead and harm customers, among others, as well as cause damage to Plaintiff's sales, good name, and reputation, and therefore constitute false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

90.     In view of Defendant USS&F's knowledge that the Falsely Certified Products were not properly tested and therefore falsely rated and advertised as UL 10B-certified, and at a minimum, after being put on notice by Plaintiff as to the inadequate certifications, the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

91.     Defendant USS&F's aforesaid acts have caused, and will continue to cause, damage to Plaintiff in an amount to be determined at trial.

92.     Defendant USS&F has caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including to its business, reputation, and goodwill, for which there is no adequate remedy at law. As such, Plaintiff is entitled to an injunction restraining Defendant USS&F, its agents, employees, representatives, and all persons acting in concert with it from engaging in further acts of false advertising, and ordering the removal of all of Defendant's false advertisements.

93.    Defendant USS&F's false and/or misleading descriptions and/or representations as aforesaid were and are willful and/or intentional, thereby making this case exceptional under 15 U.S.C. § 1117(a).

**COUNT II:**
**FEDERAL FALSE ADVERTISING**
**AND UNFAIR COMPETITION**
**AGAINST DEFENDANT GUARDIAN**
**Lanham Act § 43(a), 15 U.S.C. § 1125(a)**

94.    Plaintiff hereby incorporates and restates the allegations set forth in paragraphs 1-93 as if fully set forth herein.

95.    Defendant Guardian's statements on the Guardian Website that the Falsely Certified Products are UL 10B-certified and have complied with the requirements necessary for such certifications, are material false or misleading statements that misrepresent the nature, characteristics, and qualities of these products. These statements were placed in interstate commerce and are material misrepresentations upon which at least the public, marketplace, customers and/or potential customers have relied, and will continue to rely.

96.    Upon information and belief, Defendant Guardian, by virtue of its or misleading false statements that the Falsely Certified Products are properly UL 10B-certified when they are not, have also falsely or misleadingly represented that the Falsely Certified Products are therefore safe equivalents to Plaintiff's validly certified products, when they are not.

97.    Upon information and belief, Defendant Guardian, by virtue of its false or misleading statements that the Falsely Certified Products are properly UL 10B-certified when they are not, have also falsely or misleadingly represented that the Falsely Certified Products have passed the respective tests required for the products to be certified.

21

98.     Through Defendant Guardian's placement on the Guardian Website of the false or misleading statements that the Falsely Certified Products are properly UL 10B-certified, Guardian advertises and promotes its certification services.

99.     Upon information and belief, Guardian accepts payment from USS&F and/or ASA, GP to maintain the false or misleading statements, namely, that the Falsely Certified Products are properly UL 10B-certified, on the Guardian Website, and to allow USS&F and/or ASA, GP to continue to label their products as UL 10B certified.

100.    Defendant Guardian's business practice of falsely or misleadingly advertising and describing the Falsely Certified Products as UL 10B-certified, and as having complied with the requirements necessary for such certifications, constitutes unfair competition and false advertising.

101.    Defendant Guardian knowingly places on the Guardian Website advertisement and promotion of its services which contain false or misleading statements of fact regarding the UL 10B certifications and safety of the Falsely Certified Products.

102.    As a result of Defendant Guardian's false and misleading advertisements, descriptions, and representations, actual deception has occurred which tends to deceive a substantial portion of the intended consumers.

103.    Defendant Guardian's false and misleading advertisements, descriptions, and representations are material and are likely to influence consumer purchasing decisions.

104.    Consumers in the market for UL 10B-tested, rated, and certified Fire Safety Assemblies and systems that will withstand UL 10B 90-, 120-, or 180-minute testing standards, would not choose the Falsely Certified Products if not for Defendant Guardian's false and misleading advertisements that the Falsely Certified Products are UL 10B-tested, rated, compliant and certified.

105.    Defendant Guardian's false and misleading advertisements, descriptions, and representations injure Plaintiff and have the potential to injure the public in the event of product failure.

106.    Defendant Guardian's false and/or misleading advertisements, descriptions and, representations mislead and harm the public, customers, and potential customers, as well as cause damage to Plaintiff's sales, good name, and reputation, and therefore constitute false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

107.    In view of Defendant Guardian's knowledge that the Falsely Certified Products were not properly tested and therefore falsely or misleadingly rated and advertised as UL 10B-certified, and at a minimum, after being put on notice by Plaintiff as to the inadequate certifications, the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

108.    Defendant Guardian's aforesaid acts have caused, and will continue to cause, damage to Plaintiff in an amount to be determined at trial.

109.    Defendant Guardian has caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including to its business, reputation, and goodwill, for which there is no adequate remedy at law. As such, Plaintiff is entitled to an injunction restraining Defendant Guardian, its agents, employees, representatives, and all persons acting in concert with it from engaging in further acts of false advertising, and ordering the removal of all of Defendant's false advertisements from the Guardian Website and elsewhere.

110.    Defendant Guardian's and/or misleading descriptions and/or representations on the Guardian Website as aforesaid were and are willful and/or intentional, thereby making this case exceptional under 15 U.S.C. § 1117(a).

**COUNT III:**
**DECEPTIVE TRADE PRACTICES**
**IN VIOLATION OF N.Y. GEN. BUS. LAW § 349(a), (h)**
**AGAINST DEFENDANT USS&F**

111.     Plaintiff hereby incorporates and restates the allegations set forth in paragraphs 1-110 as if fully set forth herein.

112.     Defendant USS&F has been and is engaging in willful deceptive acts or practices in New York against the public and Plaintiff in the conduct of its business through the following consumer-oriented acts: making false and misleading statements in advertisements, marketing materials, and promotional materials; mislabeling the Falsely Certified Products as UL 10B-certified, which materially misrepresents the nature, characteristics, and qualities of the Falsely Certified Products; and inferring that the Falsely Certified Products, by way of advertising, promoting, and labeling them as UL 10B-certified, are safe alternatives and equivalents to properly certified competing products, including Plaintiff's products, when they are not. Defendant USS&F's acts complained of herein constitute consumer-oriented deceptive and/or misleading conduct in a material respect, in violation of New York's General Business Law § 349.

113.     Defendant USS&F's aforesaid misleading acts have additionally caused, and are likely to continue to cause, injury to the public, including consumers in New York, and injury to Plaintiff and to Plaintiff's sales and business reputation.

114.     Defendant USS&F's acts have caused, and unless restrained by this Court, will continue to cause, great and irreparable damage to the public and to Plaintiff's business and goodwill for which Plaintiff and the public have no adequate remedy at law.

115.     As a result of Defendant USS&F's willful and intentional misconduct, Plaintiff and the public are therefore entitled to appropriate relief as prayed hereinafter, including preliminary and permanent injunctive relief.

116. Moreover, Defendant USS&F's willful and knowing violation of Section 349 warrants treble damages and the recovery of attorney's fees.

**COUNT IV:**
**FALSE ADVERTISING**
**IN VIOLATION OF N.Y. GEN. BUS. LAW § 350**
**AGAINST DEFENDANT USS&F**

117. Plaintiff hereby incorporates and restates the allegations set forth in paragraphs 1-116 as if fully set forth herein.

118. Defendant USS&F has been and is engaging in false advertising in New York against the public and Plaintiff MRSD in the conduct of its business through the following consumer-oriented acts: making false and misleading statements in advertisements, marketing materials, and promotional materials; mislabeling the Falsely Certified Products as UL 10B-certified, which materially misrepresents the nature, characteristics, and qualities of the Falsely Certified Products; and inferring that the Falsely Certified Products, by way of advertising, promoting, and labeling them as UL 10B-certified, are safe alternatives and equivalents to properly certified competing products, including Plaintiff's, when they are not. Defendant USS&F's acts complained of herein constitute consumer-oriented deceptive and/or misleading conduct in a material respect, in violation of New York's General Business Law § 350.

119. Defendant USS&F's aforesaid misleading acts have additionally caused, and are likely to continue to cause, injury to the public, including consumers in New York, and injury to Plaintiff, and to Plaintiff's sales and business reputation.

120. Defendant USS&F's acts have caused, and unless restrained by this Court, will continue to cause, great and irreparable damage to the public and to Plaintiff's business and goodwill for which Plaintiff and the public have no adequate remedy at law.

121.    As a result of Defendant USS&F's willful and intentional misconduct, Plaintiff and the public are therefore entitled to appropriate relief as prayed hereinafter, including preliminary and permanent injunctive relief.

122.    Moreover, Defendant USS&F's willful and knowing violation of Section 350 warrants treble damages and the recovery of attorney's fees.

**COUNT V:**
**FEDERAL CONTRIBUTORY FALSE ADVERTISING**
**AGAINST DEFENDANT GUARDIAN**
**Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B)**

123.    Plaintiff hereby incorporates and restates the allegations set forth in paragraphs 1-122 as if fully set forth herein.

124.    Upon information and belief, Guardian conducted non-compliant tests and subsequently certified the Falsely Certified Products as UL 10B-rated and certified.

125.    Defendant Guardian provided ASA, GP and USS&F with baseless UL 10B certifications and ratings of the Falsely Certified Products, and describes, lists, and publishes the Falsely Certified Products' baseless UL 10B certifications on the Guardian Website, and allows ASA, GP and USS&F to falsely label their products as UL 10B certified, all of which constitutes contributory false advertising.

126.    Defendant Guardian caused, contributed to, and materially participated in USS&F's conduct by falsely certifying and rating the Falsely Certified Products as UL 10B-certified.

127.    Defendant Guardian witnessed and knew the December 2021 Test on the 180 Shutter, the March 2017 Test on the 120 Shutter, and the January 2022 Test for the 120 Horizontal Shutter did not meet the UL 10B Standard For Safety; yet, Guardian, who improperly conducted,

witnessed and/or supervised those tests, nevertheless certified the Falsely Certified Products as UL 10B-certified and provided the certifications to ASA, GP and USS&F.

128.    Defendant Guardian knew, or had reason to know, that ASA, GP and/or USS&F would engage in false advertising, by representing the Falsely Certified Products as UL 10B-certified and as having complied with the requirements for such certification, based on Defendant Guardian's inadequate tests and unfounded certification and ratings.

129.    Defendant Guardian induced USS&F to engage in false advertising by supervising, witnessing, and adopting inadequate tests and falsely rating and certifying the Falsely Certified Products as UL 10B-certified. Defendant Guardian also induced USS&F to engage in false advertising by representing that the Falsely Certified Products are safe and equivalent alternatives to properly UL 10B-tested products, when in fact the tests conducted by Guardian on the Falsely Certified Products did not adhere to the UL 10B standards, and the Falsely Certified Products did not pass the tests required for these products to be UL 10B-certified.

130.    As a result of Defendant Guardian's conduct, USS&F has made and continues to make materially false statements that misrepresent the nature, characteristics and qualities of the Falsely Certified Products. These are material misrepresentations upon which at least the public, marketplace, customers, and potential customers have relied and will continue to rely, with potentially hazardous consequences. Defendant Guardian's actions, therefore, cause USS&F to mislead and harm consumers, among others, as well as damage Plaintiff's sales, name, and reputation, all in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

131.    Given Guardian's witness to and actual knowledge, at least since the receipt of Plaintiff's June 16, 2023 letter, that the December 2021 Test, and the March 2017 Test were not conducted according to the proper UL 10B standards and that there were likely other products in

27

which proper testing procedures had not been followed, and Guardian's knowledge that the subsequent UL 10B certifications of the Falsely Certified Products were baseless and unfounded, Defendant Guardian's aforesaid acts were taken willfully, deliberately, and with the intention of causing confusion, mistake, or deception.

132.    Defendant Guardian's aforesaid acts have caused, and will continue to cause, damage to Plaintiff in an amount to be determined at trial.

133.    Defendant Guardian's aforesaid acts have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

**COUNT VI:**
**FEDERAL CONTRIBUTORY FALSE ADVERTISING**
**AGAINST DEFENDANT ASA, GP**
**AND ITS GENERAL PARTNER, STEVEN SADEGHIAN**
**Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B)**

134.    Plaintiff hereby incorporates and restates the allegations set forth in paragraphs 1-133 as if fully set forth herein.

135.    Upon information and belief, Defendant ASA, GP and its General Partner, Steven Sadeghian, commissioned Defendant Guardian to facilitate, witness, and report the December 2021 Test of the 180 Shutter. See Exhibit A. Defendant ASA, GP is the named owner of the 180 Shutter certification documents. See Exhibit B.

136.    Upon information and belief, Defendant USS&F commissioned Defendant Guardian to facilitate, witness, and report the March 2017 Test and was the recipient and manufacturer listed on the April 2017 Report. See Exhibit D.  Upon information and belief, USS&F subsequently assigned the certification resulting from the April 2017 Report to ASA, GP, and ASA, GP is now the manufacturer of the product covered by the March 2017 Test and the April 2017 Report.

137.    Upon information and belief, Defendant ASA, GP and its General Partner, Steven Sadeghian, commissioned Defendant Guardian to facilitate, witness, and report the January 2022 Test and is the recipient and manufacturer listed on the February 2022 Report. See Exhibit G.

138.    Upon information and belief, Defendant ASA, GP and its General Partner, Steven Sadeghian, provided Defendant USS&F with the baseless certifications of the Falsely Certified Products in order for USS&F to advertise the Falsely Certified Products as UL 10B rated and certified.

139.    Defendant ASA, GP and its General Partner, Steven Sadeghian, caused, contributed to, and materially participated in USS&F's conduct by providing the baseless documents that falsely certify the Falsely Certified Products as UL 10B-certified.

140.    Defendant ASA, GP and its General Partner, Steven Sadeghian, knew the December 2021 Test on the 180 Shutter, the March 2017 Test on the 120 Shutter, and the January 2022 Test on the 120 Horizontal Shutter did not meet the UL 10B Standard for Safety, and that the subsequent certifications by Guardian were baseless, yet Defendant ASA, GP still provided Defendant USS&F with the certification documents.

141.    Defendant ASA, GP and its General Partner, Steven Sadeghian, knew, or had reason to know that USS&F would engage in false advertising by describing the 180 Shutter, the 120 Shutter, and the 120 Horizontal Shutter as UL 10B-certified based on the baseless certification documents ASA, GP and its General Partner, Steven Sadeghian, provided to USS&F.

142.    As a result of Defendant ASA, GP and its General Partner, Steven Sadeghian's, conduct, USS&F has made and continues to make materially false statements that misrepresent the nature, characteristics and qualities of the Falsely Certified Products. These are material misrepresentations upon which at least the public, marketplace, customers, and potential customers

have and will rely. Defendant ASA, GP and its General Partner, Steven Sadeghian's, actions, therefore, caused USS&F to mislead and harm consumers, among others, as well as damage Plaintiff's sales, name, and reputation, in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

143.    Given ASA, GP and its General Partner, Steven Sadeghian's, knowledge that the December 2021 Test, the March 2017 Test, and the January 2022 Test were not conducted according to the proper UL 10B standards, and given Defendant ASA, GP and its General Partner, Steven Sadeghian's, knowledge that the subsequent UL 10B certifications of the Falsely Certified Products were baseless and unfounded, Defendant ASA, GP and its General Partner, Steven Sadeghian's, aforesaid acts were taken willfully, deliberately, and with the intention of causing confusion, mistake, or deception.

144.    Defendant ASA, GP and its General Partner, Steven Sadeghian's, aforesaid acts have caused, and will continue to cause, damage to Plaintiff in an amount to be determined trial.

145.    Defendant ASA, GP and its General Partner, Steven Sadeghian's, aforesaid acts have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to Plaintiff for which Plaintiff have no adequate remedy at law.

146.    Defendant Steven Sadeghian, as a general partner of Defendant ASA, GP, is jointly and severally liable for the debts and obligations of Defendant ASA, GP.

## **JURY DEMAND**

Pursuant to Rule 38(b),  Plaintiff demands a trial by jury of all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

### **AS TO COUNT I:**
### **FEDERAL FALSE ADVERTISING AND UNFAIR COMPETITION**
### **AGAINST DEFENDANT USS&F**

A)    The Court enter judgment that Defendant USS&F, as a result of its willful, deliberate, and materially false statements regarding the nature, characteristics, and qualities of USS&F's and/or ASA, GP's products have engaged in false advertising and unfair competition in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. 1125(a)(1)(B).

B)    Enjoining Defendant USS&F, together with its respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, pursuant to 15 U.S.C. § 1116(a):

1)    From selling, offering to sell, marketing, promoting, or advertising any products falsely advertised as UL 10B-certified or rated, including the 180 Shutter, the 120 Shutter, and the 120 Horizontal Shutter;

2)    From making or publishing any false and/or misleading descriptions and/or representations, stating, suggesting, or implying that the 180 Shutter, the 120 Shutter, and the 120 Horizontal Shutter are UL 10B-certified or rated;

3)    From engaging in any other acts of unfair competition with Plaintiff;

C)    Declaring that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

D)    Awarding Plaintiff all damages suffered as a result of Defendant USS&F's acts of false advertising and unfair competition, pursuant to 15 U.S.C. § 1117(a);

E)    Awarding Plaintiff up to three times Plaintiff's damages and/or Defendant's profits, pursuant to 15 U.S.C. § 1117(a);

F)       Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action, pursuant to 15 U.S.C. § 1117(a);

G)       Awarding Plaintiff the costs and disbursements of this action; and

H)       Awarding Plaintiff pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

**AS TO COUNT II:**
**FEDERAL FALSE ADVERTISING AND UNFAIR COMPETITION**
**AGAINST DEFENDANT GUARDIAN**

A)       The Court enter judgment that Defendant Guardian, as a result of its willful, deliberate, and materially false statements regarding the nature, characteristics, and qualities of USS&F's and/or ASA, GP's products have engaged in false advertising and unfair competition in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. 1125(a)(1)(B).

B)       Enjoining Defendant Guardian, together with its respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, pursuant to 15 U.S.C. § 1116(a):

1)       From selling, offering to sell, marketing, promoting, or advertising any products falsely advertised as UL 10B-certified or rated, including the 180 Shutter, the 120 Shutter, and the 120 Horizontal Shutter;

2)       From making or publishing any false and/or misleading descriptions and/or representations, stating, suggesting, or implying that the 180 Shutter, the 120 Shutter, and the 120 Horizontal Shutter are UL 10B-certified or rated;

3)       From engaging in any other acts of unfair competition with Plaintiff;

C)       Declaring that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

D)     Awarding Plaintiff all damages suffered as a result of Defendant Guardian's acts of false advertising and unfair competition, pursuant to 15 U.S.C. § 1117(a);

E)     Awarding Plaintiff up to three times Plaintiff's damages and/or Defendant's profits, pursuant to 15 U.S.C. § 1117(a);

F)     Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action, pursuant to 15 U.S.C. § 1117(a);

G)     Awarding Plaintiff the costs and disbursements of this action; and

H)     Awarding Plaintiff pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

### AS TO COUNTS III AND IV:
### VIOLATION OF N.Y. GENERAL BUSINESS LAW §§ 349, 350
### AGAINST DEFENDANT USS&F

A)     The Court issue preliminary and permanent injunctions enjoining Defendant USS&F, together with its respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them:

1)     From selling, offering to sell, marketing, promoting, or advertising any products falsely advertised as UL 10B-certified or rated, including the 180 Shutter, the 120 Shutter, and the 120 Horizontal Shutter;

2)     From making or publishing any false and/or misleading descriptions and/or representations, stating, suggesting, or implying that the 180 Shutter, the 120 Shutter, and the 120 Horizontal Shutter are UL 10B-certified or rated;

3)     From engaging in any other acts of deception, false advertising, and/or unfair competition with Plaintiff in violation of N.Y. General Business Law §§ 349 and 350;

B)     Awarding Plaintiff all damages suffered by Plaintiff as a result of Defendant USS&F's acts of deception, false advertising, and/or unfair competition;

C)      Awarding Plaintiff punitive damages;

D)      Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action;

E)      Awarding Plaintiff the costs and disbursements of this action; and

F)      Awarding Plaintiff pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

**AS TO COUNT V:**
**FEDERAL CONTRIBUTORY FALSE ADVERTISING**
**AGAINST DEFENDANT GUARDIAN**

A)      The Court enter judgment that Defendant Guardian, as a result of its willful and deliberate acts has engaged in contributory false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. 1125(a)(1)(B).

B)      The Court order Guardian to delist and remove the certifications of the 180 Shutter, the 120 Shutter, the 120 Horizontal Shutter and any other Guardian UL 10B product wherein the UL 10B testing standards and requirements were not met during testing.

C)      The Court issue preliminary and permanent injunctions enjoining Defendant Guardian, together with its respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them:

1)      From providing USS&F and/or ASA, GP any product certifications that are based on faulty, invalid, or improper UL test results;

2)      From listing, marketing, promoting, or advertising any products falsely advertised as UL 10B-certified or rated, including the 180 Shutter, 120 Shutter, and 120 Horizontal Shutter;

3)       From making or publishing any false and/or misleading descriptions and/or representations, stating, suggesting, or implying that the 180 Shutter, 120 Shutter and the 120 Horizontal Shutter are UL 10B-certified or rated.

D)       Declaring that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

E)       Awarding Plaintiff all damages suffered as a result of Defendant Guardian's unlawful acts pursuant to 15 U.S.C. § 1117(a);

F)       Awarding Plaintiff up to three times Plaintiff's damages and/or Defendant's profits, pursuant to 15 U.S.C. § 1117(a);

G)       Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action, pursuant to 15 U.S.C. § 1117(a);

H)       Awarding Plaintiff the costs and disbursements of this action; and

I)       Awarding Plaintiff pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

## AS TO COUNT VI:
## FEDERAL CONTRIBUTORY FALSE ADVERTISING
## AGAINST DEFENDANT ASA, GP AND ITS GENERAL PARTNER,
## STEVEN SADEGHIAN

A)       The Court enter judgment that Defendants ASA, GP and its General Partner, Steven Sadeghian, as a result of their willful and deliberate acts, have engaged in contributory false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. 1125(a)(1)(B).

B)       The Court issue preliminary and permanent injunctions enjoining Defendant ASA, GP, together with its respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, including General Partner Steven Sadeghian:

1)    From providing USS&F any product certifications that are based on faulty, invalid, or improper UL test results;

2)    From listing, marketing, promoting, or advertising any products falsely advertised as UL 10B-certified or rated, including the 180 Shutter, the 120 Shutter, and the 120 Horizontal Shutter;

3)    From making or publishing any false and/or misleading descriptions and/or representations, stating, suggesting, or implying that the 180 Shutter, 120 Shutter, and the 120 Horizontal Shutter are UL 10B-certified or rated.

C)    Declaring that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

D)    Awarding Plaintiff all damages suffered as a result of Defendants ASA, GP and its General Partner, Steven Sadeghian's, unlawful acts pursuant to 15 U.S.C. § 1117(a);

E)    Awarding Plaintiff up to three times Plaintiff's damages and/or Defendants ASA, GP and its General Partner, Steven Sadeghian's, profits, pursuant to 15 U.S.C. § 1117(a);

F)    Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action, pursuant to 15 U.S.C. § 1117(a);

G)    Awarding Plaintiff the costs and disbursements of this action; and

H)    Awarding Plaintiff pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

## AS TO ALL COUNTS

Awarding Plaintiff such other, further or different relief in its favor and against Defendants as this Court may deem just and proper.

Dated:  March 13, 2024                                COZEN O'CONNOR P.C.


                                                     */s/ Lisa A. Ferrari*

Lisa A. Ferrari (LF8081)
Edward M. Weisz (EW4461)
3 World Trade Center
175 Greenwich Street, 55th Floor
New York, NY 10007
Tel. (212) 509-9400
Fax: (212) 509-9492
Email: lferrari@cozen.com
eweisz@cozen.com

*Attorneys for Plaintiff McKeon Rolling Steel Door Co., Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 13, 2024, the foregoing **FIRST AMENDED COMPLAINT FOR FEDERAL FALSE ADVERTISING AND UNFAIR COMPETITION; N.Y. STATE DECEPTIVE TRADE PRACTICES; N.Y. STATE FALSE ADVERTISING; FEDERAL CONTRIBUTORY FALSE ADVERTISING**, with **EXHIBITS A-I** attached, has been filed electronically and is available for viewing and downloading from the ECF System, and is being served upon all counsel of record *via* ECF transmissions in accordance with the Electronic Filing System of the Court.

*/s/  Lisa A. Ferrari*
Lisa A. Ferrari