UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

   MCKEON ROLLING STEEL DOOR CO.,    :

   INC.                                          :

                                Plaintiff,   :     1:23-cv-8720 (ALC)

          -against-                  :

   U.S. SMOKE & FIRE CORP., ET AL     :    **ORDER & OPINION**

---------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff McKeon Rolling Steel Door Co. Inc. brings this action against Defendants U.S. Smoke & Fire Corp. ("USS&F"); ASA, GP; Guardian Fire Testing Laboratories, Inc. ("Guardian"); and Steven Sadeghian ("Sadeghian") for false advertising and unfair competition in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349(a), (h); and false advertising in violation of N.Y. Gen. Bus. Law § 350. Defendant has raised an affirmative defense of unclean hands and brings a counterclaim against Plaintiff for violating the Defend Trade Secrets Act ("DTSA").

Both Parties move for summary judgment. Plaintiff moves for summary judgment on its Lanham Act and state claims. Defendant moves for summary judgment on Plaintiff's claims, seeking dismissal. Plaintiff also moves for summary judgment on Defendant's counter seeks dismissal of Plaintiff's claims and defensively moves for summary judgment on Defendant's Counterclaim, seeking dismissal.

1

For the reasons stated below, Defendant's motion for summary judgment on Plaintiff's claims is GRANTED; Plaintiff's motion regarding its own claims is DENIED. Plaintiff's Motion for summary judgment on Defendant's Counterclaim is GRANTED.

**BACKGROUND[1]**

### Parties

Plaintiff and Defendant USS&F are both manufacturers of commercial and special purpose safety assemblies, including fire and security door, shutter, and curtain assembly systems. Pl. Stmt. at 3. Defendant ASA, GP is, according to Plaintiff, a general partnership.[2] *Id.* at 4. ASA and USS&F have an exclusive manufacturer-distributor relationship, wherein ASA contract manufactures metal parts for USS&F products, including the USS&F products certified to UL 10B. *Id.* Defendant Guardian tests, inspects, and certifies fire-rated products. *Id.* at 3. Defendant Sadeghian has acted on behalf of ASA in connection with ASA's business with USS&F. He is the CEO and President of USS&F. *Id.* at 4; see D. Stmt. at 8.

### Facts

Defendants USS&F and ASA manufacture and sell fire shutters that close openings in buildings and block the passage of flames and gas in the event of a fire. Pl. Stmt. at 5. These fire shutters are installed in public buildings including hospitals, schools, and airports. *Id.* They are stored in ceilings and descend from ceilings if there is a fire. *Id.* Building codes throughout the United States require that fire shutters be tested and certified by UL 10B Standard for Safety. *Id.* at 7. USS&F's customers are architectural firms. Det. Mot. at 3.

---

[1]    This section is drawn from the Amended Complaint, see ECF No. 49, Plaintiff's Statement of Undisputed Material Facts submitted pursuant to Local Civil Rule 56.1, *see* ECF No. 144 ("Pl. Stmt."), Defendants' Statement of Undisputed Material Facts, *see* ECF No. 149. ("D. Stmt."), Defendants' Response to Plaintiff's Statement of Undisputed Material Facts, *see* ECF No. 169 ("D. Resp. Stmt."), Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, *see* ECF No. 173 ("Pl. Resp. Stmt."), Plaintiff's Reply to Defendant's Response to Statement of Undisputed Material Facts, *see* ECF No. 178 ("Pl. Rep."), and the summary judgment briefing.
[2]    Defendants contend that ASA is a limited partnership. D. Stmt. at 3.

The products at issue are the Hose Stream 120 First Responder, the Hose Stream 180 First Responder, the Hose Stream 120 Horizontal Fire Shutter, the Hose Stream 120 and the Dual Hose Stream 120 (the "Subject Products"). Pl. Mot. at 5.

Guardian tests products such as the ones at issue in this case to see if they can be certified to the UL 10B Standard. *Id*. at 6. Once Guardian deems the product certified, it posts the product to its publicly accessible website. *Id.* For large-scale testing, Guardian will receive assistance from third-party agencies like NGC, which has been accredited for UL 10B testing for over 20 years. Det. Mot. at 4-5. Once the products at issue were deemed "certified" by Guardian, USS&F posted the certification information on its publicly accessible website. Pl. Mot. at 7.

**<u>Procedural History</u>**

On October 4, 2023, Plaintiff filed a Complaint against the Defendants for false advertising under the Lanham Act and New York state business laws by stating that Defendants' products were not certified under the UL 10B standard. ECF No. 1. On December 1, 2023, Defendants filed their Motion to Dismiss. ECF No. 22. On December 16, 2023, the Defendants withdrew their Motion to Dismiss pursuant to the Court's December 11, 2023 Order. ECF Nos. 37, 34. On January 19, 2024, Defendants filed their Answer. ECF No. 42. On March 13, 2024, Plaintiffs filed their Amended Complaint, which is the Operative Complaint. ECF No. 49. On March 25, 2024, Defendants filed an Answer to the Amended Complaint and included a Counterclaim. ECF No. 52.

On May 10, 2024, Plaintiff filed a Motion to Dismiss the Counterclaim. ECF No. 60. On November 22, 2024, the Court denied Plaintiff's Motion to Dismiss and granted leave to file a renewed motion. ECF No. 101. On January 7, 2025, Plaintiff filed a renewed Motion to Dismiss the Counterclaim. ECF No. 117.

On May 14, 2025, both Parties filed their Memoranda of Law for Summary Judgment. ECF No. 145. On May 17, 2025, Defendant filed a corrected Memorandum of Law. ECF No. 165. On June 2, 2025, both Parties filed their Oppositions. ECF Nos. 169, 171. On June 9, 2025, both Parties filed their Replies. ECF Nos. 177, 178. On September 26, 2025, the Court orally denied Plaintiff's Motion to Dismiss the Counterclaim. ECF No. 188. On December 18, 2025, at 2:30 pm, the Court held oral arguments on the cross summary judgment motions.

**STANDARD OF REVIEW**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson*, 477 U.S. at 248. Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 900 (S.D.N.Y. 1988). An issue of fact is "genuine" when a reasonable fact finder could render a verdict in the nonmoving party's favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation omitted).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). A movant "may discharge its burden by showing that the nonmoving party has 'failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Better*

*Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 383 (S.D.N.Y. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"To avoid summary judgment, a party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Gallo*, 22 F.3d at 586. When the moving party has met its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *Id.*

"If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14-CV-07354 (JGK), 2016 WL 4120635, at \*4 (S.D.N.Y. July 22, 2016) (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[W]hen both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc.*, 996 F.2d at 1461. Instead, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.*

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See*

*Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *See Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* (citing *Anderson*, 477 U.S. at 252).

I.      Plaintiff's Claims

Plaintiff moves offensively for summary judgment on the Lanham Act and state law claims, while Defendants defensively move for summary judgment on these claims.

A.  Lanham Act

Counts I, II, V, and VI of the Amended Complaint involve Section 43(a) of the Lanham Act, which provides, in relevant part, that:

> Any person who, on or in connection with any goods or services . . . uses in commerce. . any false or misleading description of fact, or false or misleading representation of fact, which –…(B) in commercial advertising or promotion, misrepresents the nature, characteristic, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.15 U.S.C. § 1125(a)(1).

In order to prove a Lanham Act claim, a plaintiff must prove: 1) the defendant made false or misleading statements as to their own products (or another's); 2) actual deception occurred, or at least a tendency to deceive a substantial portion of the intended audience; 3) the deception is material in that it is likely to influence purchasing decisions; 4) the advertised goods travel in interstate commerce; and 5) there was a likelihood of injury to the plaintiff. *Id.*

Plaintiff has failed to demonstrate, as a matter of law, that they can prove all five elements. In fact, Plaintiff's Motion for Summary Judgment only deals with three of the five elements – that the Challenged Statements are commercial, that they traveled in interstate

commerce, and that they are material. Of most significance to the Court is Plaintiff's failure to address in its own motion how the challenge statements are false or misleading. Viewing Plaintiff's motion in the light most favorable to Plaintiff, their motion on the Lanham Act and state law claims is denied.

**False or misleading statements**

"To establish false advertising under Section 43(a), a plaintiff must first demonstrate that the statement in the challenged advertisement is false." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014). There are two theories for false advertising. "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers." *S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 238 (2d Cir.2001). "[I]n addition to proving falsity, the plaintiff must also show that the defendants misrepresented an inherent quality or characteristic of the product, that the defendant placed the false or misleading statement in interstate commerce, and that the plaintiff has been ... injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova*, 760 F.3d at 255.

Plaintiff's summary judgment motion does not address why the Challenged Statements are false or misleading. Meanwhile, Defendants argue for summary judgment of Plaintiff's claims based on the Challenged Statements' being literally true. Deft. Mot. at 9-14. Based on the undisputed facts, because the statements at issue are literally true, Plaintiff cannot sustain a claim for false advertising under the Lanham Act. If a reasonable juror could find that the statements are literally false, the Court also need not address Defendants' other argument that Plaintiff suffered no harm.

The Challenged Statements include all statements made concerning the UL 10B certifications of the Subject Products on the Guardian Website; on the USS&F Website; in USS&F's quotations; and in ASA/USS&F's test reports. The Challenged Statements also include all such statements made on the Guardian Website concerning the UL 10B certifications of Door Systems, Inc. products. Pl's Mot. at 12.

Defendants argue that the statements are literally true because "USSF's products were tested by NGC; the tests were witnessed by Guardian, and Guardian issued certifications that the products were UL 10B certified." Deft. Mot. at 10. One example of the Challenged Statement in the Amended Complaint is taken directly from USSF's website. It states, "The U.S. Smoke & Fire Hose Stream 180 Shutter is tested to UL10B." Am. Compl. Ex. C. at 1. At issue is simply the truth of whether Defendants could advertise their products as UL 10B certified.

However, in its Opposition to Defendant's Motion, Plaintiff argues that the statements are literally false because even though the products stated they were UL 10B certified, they were not *properly* certified. In other words, Plaintiff concedes that the products were certified by an accredited testing agency but seeks to prove literal falsity by arguing that the products should not have been certified. Prior to filing its Complaint, Plaintiff obtained what Defendants deem "confidential test reports" of the Subject Products and interpreted the results to determine whether the Products should have been certified to UL 10B standard. To date, Plaintiff has not disclosed who assisted in obtaining the test reports, citing fear of retribution for the individuals involved. Pl. Opp. at 2.

During discovery, Mike Rizzo, from NGC (the certified testing agency) stated that no one, other than the International Accreditation Service has the authority to tell NGC it performed product tests improperly. Deft Mot. at 10; *see* also ECF No. 157, Ex. 4. Rizzo also stated "that in

8

his 12 years of conducting tests, he has never seen a situation where a non-client of NGC obtained a copy of an NGC test report and complained about the conduct of the test. He further testified that in his experience, no one had ever obtained a test report without permission, and nobody has ever complained before that NGC testing was improper." Deft. Mot. at 10 (internal citations omitted).

Plaintiff states that it plans to prove literal falsity under a so-called "establishment doctrine," which it says will "prove the Test Reports do not support the proposition for which they were cited; namely, that the subject Products meet the UL 10B certification requirements." Pl. Mot. at 12-13. Plaintiff goes on to further argue that "under the establishment doctrine where defendant's statements explicitly or implicitly rely on the reliability of tests to make product claims, the plaintiff need only show 'that the tests did not establish the proposition for which they were cited.'" Pl. Opp. at 13 (citing *Castrol, Inc. v. Quaker State Corp*., 977 F.2d 57 (2d Cir. 1992)). Also in support of this doctrine, Plaintiff cites to *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007). Pl. Opp. at 17. Plaintiff distorts what these cases hold in an attempt to justify how it came to be that Plaintiff, a direct competitor of Defendants, was in the position to claim Defendants' accreditation was false.

At issue in *Castrol* was whether a Quaker State television commercial asserting that "tests prove" its 10W-30 motor oil provides better protection against engine wear at start-up was literally false under § 43(a) of the Lanham Act, 977 F.2d 57, 62 (2d Cir. 1992). The *Castrol* Court held that when plaintiffs claim false advertising based on testing, they bear a burden of showing the tests are not sufficiently reliable. *Id.* However, this case (and the line of cases it

9

comes from[3]) differs from the facts at issue here. *Castrol* dealt with whether one product was superior to another product based on testing, not whether a product was ever accredited by an outside entity. This distinction is important. The rationale by Courts in the line of cases Plaintiff cites to stems from concern for the "gullible consumer." *Procter & Gamble Co. v. Chesebrough-Pond's Inc.,* 588 F. Supp. 1082, 1093 (S.D.N.Y.), aff'd, 747 F.2d 114 (2d Cir. 1984). Courts wanted to ensure that advertisements were based on reliable testing when they claimed to compare products and declared one product superior to another, particularly when the audience was a lay consumer. Here, the Challenged Statements are not stating that one product is superior to another. The statements merely assert that the Products were certified to UL 10B Standard. Therefore, this Court rejects the application of the cases that Plaintiff cites to, as well as this so-called "establishment doctrine" in demonstrating literal falsity in the context of this case.

Instead, in evaluating whether the Challenged Statements are literally true, the Court is persuaded by the reasoning in the analogous summary order, *Board.-Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556 (2d Cir. 2018). In *Board.-Tech*, the plaintiff similarly went out of its way to test whether a competitor's light switches should have actually been certified. "Without any indication that UL decertified the defendant's product—or (perhaps) that the defendant's product had materially changed since certification—there would be no plausible allegation of a false statement." *Id.* at 560. Additionally, the district court held that the plaintiff could not "police" the testing agency's mark of certification and warned that

---

[3] See *McNeil–P.C.C., Inc. v. Myers Squibb Co.,* 938 F.2d 1544, 1549 (2d Cir.1991); *Procter & Gamble Co. v. Chesebrough–Pond's Inc.,* 747 F.2d 114, 119 (2d Cir.1984).

"private testing of a product against standards could be used to commence a lawsuit that could expose competitive design and information to precisely the entity that should not have it." *Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*, No. 17-CV-5028 (KBF), 2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017), at *7.

Here, Plaintiff concedes that it did not have UL re-test the Subject Products. Pl. Opp. at 18. Plaintiff has not offered any evidence from UL itself that the Subject Products did not meet UL's standard. Plaintiff also offers no evidence that the Products were not actually accredited by a legitimate testing agency. Therefore, the Court finds there is no genuine dispute of material fact with regard to literal falsity. The Defendants' have met their burden with respect to the Challenged Statements' being literally true, so Defendants are entitled to summary judgment on Counts I, II, V, and VI.

B.  New York State Claims

In Counts III and IV of the Amended Complaint, Plaintiff brings claims against Defendant for deceptive trade practices under N.Y. Gen. Bus. Law § 349(a), (h); and false advertising in violation of N.Y. Gen. Bus. Law § 350. "[Gen. Bus. Law] 349 declares deceptive acts and practices unlawful and section 350 declares false advertising unlawful. The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to Section 349. The elements of a cause of action under these statutes are that: (1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Denenberg v. Rosen*, 71 A.D.3d 187, 194, 897 N.Y.S.2d 391 (1st Dep't 2010) (quotation marks and internal citation omitted). "The standards under [GBL 349 and 350] are substantially the same as those applied to claims brought under Section

11

43(a) of the Lanham Act." *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 518 (S.D.N.Y. 2012). Because the Parties' arguments for summary judgment do not specify whether they are for the state law claims or the federal claims and because courts have found little difference in evaluating these claims, the Court applies the same reasoning above in denying Plaintiffs' motion for summary judgment and granting Defendants' motion for summary judgment as to the New York State claims. *See Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361 (S.D.N.Y. 2019) (analyzing Lanham Act and Section 349 and 350 claims similarly).

II.    Defendants' Counterclaim

Defendants bring a counterclaim under the Defend Trade Secrets Act ("DTSA"). Specifically, Defendants assert that, the test reports used in this litigation "were known by McKeon to be confidential and to represent the underlying testing and evaluation made by NGC Testing Services ('NGC') and Defendant Guardian Fire Testing Laboratories, Inc. ('Guardian'), both of whom are known to McKeon as reputable, independent testing and certification entities." Defendants' Answer and Counter Claim to Plaintiff's First Amended Complaint. ("Deft. Ans.") ECF No. 52.

To prevail on their DTSA claim, Defendants must prove that (1) they possessed a trade secret, and (2) that Plaintiff misappropriated the trade secret. *Democratic Nat'l Comm.v. Russian Fed.*, 392 F. Supp. 3d 410, 447 (S.D.N.Y. 2019). Summary judgment is appropriate "where it is clear that the information at issue is not actually secret." *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 384 (S.D.N.Y. 2023). Summary judgment is also warranted where the trade secret holder discloses its alleged trade secrets "to others who are under no obligation to protect the confidentiality of the information," or if information is otherwise accessible. *Structured Cap. Sol., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 832 (S.D.N.Y. 2016)

(quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)); *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 518 (S.D.N.Y. 2017) ("[A] plaintiff cannot recover for the misappropriation of a trade secret if he revealed that secret…").")

A. Defendants did not possess a trade secret.

Under the DTSA, a trade secret may take a wide variety of forms,

[S]o long as: (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Better Holdco*, 666 F. Supp. 3d at 384 (quoting 18 U.S.C. § 1839(3)).

Even if the components of the trade secret are individually publicly available, the information may still constitute a trade secret if "the unified process, design[,] and operation of [the components], in unique combination affords a competitive advantage." *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) (quoting *Imperial Chem. Indus. Ltd. v. National Distillers and Chem. Corp.*, 342 F.2d 737, 742 (2d Cir.1965)) (internal quotation marks omitted). "To show that such a process, design, or operation constitutes a trade secret, a party must describe the trade secret with 'specific and concrete information.'" *Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 48 (2d Cir. 2018) (internal quotation omitted).

The existence of a trade secret is generally a question of fact and therefore more appropriate for a jury to decide. *See Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 274 (S.D.N.Y. 2021). "As such, where both parties have proffered evidence as to whether an alleged trade secret is well-known in the industry, a genuine issue of fact exists and summary judgment for either party is not warranted." *Town & Country*, 556 F. Supp. 3d at 274. Nevertheless, "summary judgment may be appropriate 'where it is clear that the information at issue is not

13

actually secret or there is no discernible economic value from that information not being generally known.'" *Better Holdco*, 666 F. Supp. 3d at 384 (quoting *Catalyst Advisors, L.P., v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 672 (S.D.N.Y. 2022)).

In its summary judgment motion, Plaintiff argues that the test reports were not trade secrets because Defendants agreed to their public filing in Plaintiff's First Amended Complaint and in Plaintiff's Summary Judgment Motion. Pl. Mot. at 23. Plaintiff raises that Defendants even filed the test report for the Hose Stream 180 in support of their own Motion to Dismiss. Additionally, Plaintiff says that Defendants emailed the test reports to third parties who were not under an obligation to keep them confidential. *Id.* Plaintiff argues that if the test reports were actually trade secrets that Defendants would have swiftly acted in 2023 (when the Complaint was filed) to protect them. *Id.* With respect to reasonable measures, Plaintiff argues that Defendants' choice of a confidentiality footer at the bottom of emails with the reports was insufficient.

Defendants argue that the third parties to whom they emailed the test reports were architects, who in turn sent them to government officials. Deft. Opp. at 14. From Defendants' perspective, sending the reports to government officials did not make the reports publicly accessible. Defendants point out the irony that Plaintiff also uses a small footer at the bottom of its emails to denote confidentiality. *Id*. at 15-16. Defendants also contend that they password-protected the reports. Cumulatively, Defendants assert they took reasonable measures to protect the reports, thereby a reasonable juror could conclude that they were trade secrets.

As the Court in *Better Holdco* found, "the 'reasonableness' of any protective measure is a case-specific inquiry and a question of fact. And so, to defeat a motion for summary judgment, a plaintiff need only point to evidence of protective measures, and then it becomes the jury's task to evaluate whether they were reasonable." 666 F. Supp. 3d 328, 385 (S.D.N.Y. 2023).

In response to Plaintiff's contention that Defendants did not object to Plaintiff's public filing of the test reports in the First Amended Complaint, Defendants argue that the reports had already been released by Plaintiff in the original complaint. Moreover, Defendants state that they only included the test report for Hose Stream 180 in their Motion to Dismiss because the version publicly filed by Plaintiff had typographical errors, so Defendants chose to publish a corrected version. *Id.* at 18. Plaintiff does not cite any case law demonstrating that an analysis of reasonable measures includes steps taken after a lawsuit is brought, nor does there seem to be any. Plaintiff's arguments are more in line with a duty to mitigate damages. Therefore, the Court does not take the post-litigation actions into account when analyzing the reasonableness of Defendants' protective measures.

Here, Defendants used password-protection and footers to indicate the test reports were confidential. These are clearly protective measures. Courts have held that these measures can withstand motions to dismiss and summary judgment. *See Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 675 (S.D.N.Y. 2022) ("Generally speaking, [reasonable] measures can include the use of confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality." (internal quotation marks omitted)).

However, the Court cannot overlook that Defendants shared the test reports widely outside of their company. Defendants shared the reports not just with code officials, which the Court is not concerned with for purposes of its analysis, but with various architectural firms. These firms were Defendants' customers. Defendants do not provide evidence that there was a confidential relationship between them and the architects. Courts regularly analyze whether there was a

15

confidential relationship, not just a confidentiality footer, when determining if something is a trade secret. *See Pauwels v. Deloitte LLP*, No. 19-CV-2313 (RA), 2020 WL 818742 (S.D.N.Y. Feb. 19, 2020) (affirming dismissal of a trade secret under New York law, which follows the same analysis to DTSA, where plaintiff shared alleged trade secrets with third parties without confidentiality protections). Defendants do not allege a formalized agreement in writing or that there were specific restrictions in place to prevent the architects from sharing the test reports. Since Defendant disclosed its alleged trade secrets "to others who are under no obligation to protect the confidentiality of the information," the Plaintiff's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED in part and GRANTED in part. Defendants' motion for summary judgment is GRANTED.  The Clerk of Court is respectfully directed to terminate ECF No. 148.

**SO ORDERED.**

**Dated:**  March 30, 2026

 

New York, New York                    ANDREW L. CARTER, JR.

                                United States District Judge

16